

**ORDERED in the Southern District of Florida on November 01, 2010.**

**Erik P. Kimball, Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    CASE NO.: 08-15917-EPK

**PHOENIX DIVERSIFIED**                  CHAPTER 7
**INVESTMENT CORPORATION,**

        Debtor.

_____/

**KENNETH A. WELT, Chapter 7**            ADV. NO.: 10-03113-EPK
**Trustee of PHOENIX DIVERSIFIED**
**INVESTMENT CORPORATION,**

      **Plaintiff,**

v.

**EFLOORTRADE, LLC; JOHN MOORE,**
individually; **KYLE H. KELLEY,**
individually; **KELLEY GOLDBERG LEACH**
**AND COHN, P.L.;** and **CCIP ORLANDO,**
**LTD., LLC,**

      **Defendants.**

_____/

## AMENDED ORDER DENYING MOTIONS TO DISMISS

**THIS MATTER** came before the Court upon the *Defendant CCIP Orlando, Ltd., LLC's Motion to Dismiss or, in the Alternative, Motion for Permissive Abstention* [DE 11] (the "CCIP Motion") filed by CCIP Orlando, Ltd., LLC ("CCIP") and the *Defendants, Kyle H. Kelley and Kelley Goldberg Leach & Cohn, P.L.'s Motion to Dismiss Adversary Proceeding or in the Alternative for Abstention and Incorporated Memorandum of Law* [DE 17] (the "Kelley Motion") filed by Kyle H. Kelley, individually ("Mr. Kelley") and Kelley, Goldberg, Leach & Cohn, P.L. ("KGLC," and, together with Mr. Kelley, the "Kelley Defendants"). The Court refers to the Kelley Defendants and CCIP, collectively, as the "Moving Defendants." In addition to the CCIP Motion and the Kelley Motion, the Court reviewed the response and reply briefs filed by the parties. For the reasons set forth below, the Court denies all relief requested in the CCIP Motion and the Kelley Motion.[1]

### Procedural and Factual Background

For purposes of the CCIP Motion and the Kelley Motion, the Court accepts all allegations in the Complaint in the light most favorable to the plaintiff. *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1190 (11th Cir. 1999). All factual allegations set forth below are as alleged in the Complaint.

Plaintiff Kenneth A. Welt (the "Trustee") is the chapter 7 trustee of Phoenix Diversified Investment Corp. (the "Debtor" or "Phoenix"). The Debtor was a commodities and futures trading and investment entity. (Compl. ¶ 10.) Michael Meisner ("Mr. Meisner") was the primary controlling person of the Debtor. (Compl. ¶ 10.) Noam Bengal, Lorraine Hildebrand, Victoria Meisner, Michelle Sareen, and Eric Polirer were employees, officers, and/or directors of

---

[1] This order supersedes and replaces that certain *Order Denying Motions to Dismiss* entered October 29, 2010 [DE 51], which is vacated.

2

the Debtor with authority over certain financial and operational aspects of the Debtor's business, including authority over certain of the Debtor's bank accounts and trading accounts.  (Compl. ¶¶ 90-91.)  Mr. Meisner used the Debtor to operate a Ponzi scheme, violate the Commodity Exchange Act, and breach his duties to the Debtor. (Compl. ¶ 10.)

The Trustee brings this adversary proceeding against five defendants:  (1) EfloorTrade, LLC ("EFT"), (2) John Moore ("Mr. Moore" and, with EFT, the "EFT Defendants"); (3) Mr. Kelley; (4) KGLC; and (5) CCIP.

EFT was the principal introducing broker for the Debtor.  EFT facilitated communications between the Debtor and Man Financial, Inc. n/k/a MF Global, Inc. ("Man Financial"), the Debtor's main clearing firm and future commodities merchant.  Mr. Moore is the majority owner and controlling person of EFT.  (Compl. ¶¶ 11-12.)

The Kelley Defendants acted as business advisors and accountants for EFT.  KGLC is an accounting firm.  Mr. Kelley is a Certified Public Accountant and a partner in KGLC.  Mr. Kelley was a minority owner of EFT, a lender to EFT, the Chief Financial Officer of EFT, and an EFT registered principal.  (Compl. ¶¶ 15-16.)  CCIP is the successor-in-interest to KGLC. (Compl. 19.)

The Complaint contains six counts:  against the EFT Defendants for negligence (Count I); against the EFT Defendants for breach of fiduciary duty (Count II); against the EFT Defendants for aiding and abetting Mr. Meisner's breach of fiduciary duty (Count III); against the Kelley Defendants for professional negligence (Count IV); against the Kelley Defendants for aiding and abetting Mr. Meisner's breach of fiduciary duty (Count V); and against CCIP as to the claims in Count IV and Count V under a theory of successor liability (Count VI).  The Moving Defendants challenge Counts IV, V, and VI of the Complaint.

The Debtor was incorporated in 2001. Mr. Meisner, its primary controlling officer, operated the Debtor as an investment company. From 2003 through May 2008, the Debtor solicited, accepted, and pooled tens of millions of dollars from over one hundred people and entities for the purpose of trading. (Compl. ¶¶ 21-22.)

Mr. Meisner purposefully failed to register the Debtor with the Commodity Futures Trading Commission and the National Futures Association. Such failure included not registering as a Commodity Pool Operator ("CPO") with regard to his operation of the Debtor. This violated the Commodity Exchange Act. (Compl. ¶¶ 23 and 24.)

Mr. Meisner failed to register as a CPO because registration would have subjected the Debtor to certain requirements intended to safeguard the Debtor's customers against fraud and other abuses. These requirements include financial disclosures and reporting and the possible retention of an in-house compliance officer. The registration requirements would have made it impossible for Mr. Meisner to continue to act wrongfully through the Debtor. (Compl. ¶¶ 24-25.)

In 2004, the Debtor became a customer of EFT. The relationship between EFT and the Debtor grew closer, and EFT became a trusted advisor to the Debtor, a relationship that exceeded the typical relationship between an introducing broker and its customer. (Compl. ¶ 34.) The EFT Defendants provided the Debtor advice on the preparation of financial statements, the structure of the Debtor's trading operations, the Debtor's corporate governance, possible new business opportunities, the way in which the market was moving, and, through technology support and assistance, the Debtor's actual trading mechanisms. (Compl. ¶ 107.) Likewise, the Moore family and the Meisner family developed a personal relationship. (Compl. ¶ 32.) Mr. Moore hired Mr. Meisner to work for him as a branch manager of Diamond Head Capital, LLC,

4

a licensed commodity trading advisor of which Mr. Moore was the majority owner and controlling person.  (Compl. ¶¶ 13, 36.)

As a result of the relationship between the EFT Defendants and the Debtor, the EFT Defendants (a) owed the Debtor the duties of loyalty and care and the duty to act in a non-negligent manner, and (b) had a fiduciary duty to the Debtor.  The EFT Defendants breached these duties and were negligent, causing the Debtor to suffer damage in an amount of tens of millions of dollars.  The EFT Defendants breached their duties to the Debtor by failing to ensure compliance with the Debtor's corporate governance, enabling the Debtor to continue trading with the knowledge that Mr. Meisner presented financial information that was inaccurate and inconsistent with other information, and failing to inform the Debtor of the red flags of Mr. Meisner's wrongful acts and the harm he was causing to the Debtor.  (Compl. ¶¶ 109, 112-119.)

Further, the EFT Defendants aided and abetted Mr. Meisner's breach of fiduciary duty. As the Debtor's primary controlling person, Mr. Meisner had a fiduciary duty to the Debtor. (Compl. ¶ 122.)  Mr. Meisner breached his fiduciary duty to the Debtor by violating the Commodity Exchange Act, operating a Ponzi scheme through the Debtor, maintaining control over the Debtor notwithstanding changes in the Debtor's corporate governance apparently ceding control to others, and misrepresenting the Debtor's financial state.  (Compl. ¶ 123.)  The EFT Defendants knew that Mr. Meisner owed fiduciary duties to the Debtor and that Mr. Meisner breached those duties.  (Compl. ¶¶ 124-25.)  The EFT Defendants assisted Mr. Meisner in his wrongdoing and breach of duties by, for example, coordinating the sham dissociation of Mr. Meisner from management of the Debtor in 2005.  (Compl. ¶¶ 42-43, 126.)  The EFT Defendants also assisted Mr. Meisner when he caused the Debtor to act as a CPO in violation of the Commodity Exchange Act.  The EFT Defendants failed to act to prevent Mr. Meisner's wrongful

5

acts when applicable law and practice required the EFT Defendants to take action.  (Compl. ¶¶ 127-28.)

In 2005, Man Financial required the Debtor to provide a financial statement in order to continue operations through Man Financial.  (Compl. ¶ 66.)  Following the EFT Defendants' recommendation, the Debtor hired the Kelley Defendants to provide this financial statement.  (Compl. ¶ 66.)  The financial statement is incomplete and unsatisfactory on its face and is inconsistent and contradicts other financial information known to the Kelley Defendants.  (Compl. ¶ 70, 73.)  Further, the Kelley Defendants had an undisclosed material conflict of interest and lacked independence from Mr. Meisner and the Debtor.  (Compl. ¶ 75, 78.)  The Kelley Defendants were aware that Mr. Meisner was pooling funds in the Debtor without proper registration and was therefore violating the Commodity Exchange Act.  (Compl. ¶ 79.)  The Kelley Defendants knew that Mr. Meisner kept control of the Debtor notwithstanding his disassociation from the Debtor.  The Kelley Defendants nevertheless accepted the retention and financial representations necessary to prepare the financial statement for the Debtor.  (Compl. ¶ 80.)  The Kelley Defendants failed to review the financial statement in derogation of their own internal policy and procedure.  (Compl. ¶ 85.)  The Kelley Defendants did not perform their professional services in good faith.  (Compl. ¶ 87.)     The Kelley Defendants' actions and inactions resulted in damage to the Debtor in the tens of millions of dollars.

## Subject Matter Jurisdiction

The Kelley Defendants argue that this Court lacks subject matter jurisdiction over the present adversary proceeding.

District courts, and this Court pursuant to 28 U.S.C. § 157(a) and the standing order of reference in this district, have original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). The

Trustee alleges that this Court has "related to" subject matter jurisdiction pursuant to 28 U.S.C. §

1334(b).

> The usual articulation of the test for determining whether a civil proceeding is
> related to bankruptcy is whether the outcome of the proceeding could conceivably
> have an effect on the estate being administered in bankruptcy. The proceeding need
> not necessarily be against the debtor or against the debtor's property. An action is
> related to bankruptcy if the outcome could alter the debtor's rights, liabilities,
> options, or freedom of action (either positively or negatively) and which in any way
> impacts upon the handling and administration of the bankrupt estate.

*Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (*quoting*

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

"The key word in the Lemco Gypsum/Pacor test is 'conceivable,' which makes the

jurisdictional grant extremely broad." *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170

F.3d 1340, 1345 (11th Cir. 1999). If the resolution of a dispute could conceivably have an

impact on the amount of money available for distribution in the bankruptcy estate, the

bankruptcy court has subject matter jurisdiction over that dispute. *Winchester Global Trust Co.*

*v. Entrust NPL, Corp. (In re Ryan)*, 276 Fed. Appx. 963, 966 (11th Cir. 2008).

In the present case, if the Trustee is successful more money will be included in the estate

and be available for distribution to creditors. Potential augmentation of the estate is sufficient to

establish "related to" jurisdiction. The Court has subject matter jurisdiction over this adversary

proceeding.

### Standing

The Moving Defendants argue that the Trustee lacks standing to bring this action. The

Moving Defendants argue that the Trustee impermissibly asserts claims belonging to individual

creditors, namely, the victims of the Ponzi scheme. Although not directly argued by the Moving

Defendants, case law cited by them suggests that because the debtor is allegedly a "sham" corporation, it can suffer only illusory injury for which it cannot sue, and so the Trustee, as the Debtor's successor, lacks standing.

In general, a trustee has no standing to sue third parties on behalf of a debtor's creditors. *Caplin v. Marine Midland Grace Trust Co*., 406 U.S. 416 (1972); *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 982 (11th Cir. 1990) (decision limited to the specific facts of the case). A trustee has standing to pursue claims that belong to the debtor itself. *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1202 (11th Cir. 2003); *Tabas v. Greenleaf Ventures, Inc. (In re Flagship Healthcare, Inc.)*, 269 B.R. 721, 727 (Bankr. S.D. Fla. 2001). Such claims of the debtor constitute property of the estate under 11 U.S.C. § 541(a)(1). *Gordon v. Basroon (In re Plaza Mortgage & Fin. Corp.)*, 187 B.R. 37, 40 (Bankr. N.D. Ga. 1995).

The Moving Defendants argue that "[a]lthough the existence of [the Debtor's] victims is strangely absent from the Complaint," the Complaint is, in effect, seeking to recover on behalf of investors in the Ponzi scheme. This argument requires the Court to read into the Complaint causes of action and facts not expressly alleged. Although the Complaint mentions the existence of the Ponzi scheme as one harm done by Mr. Meisner through the Debtor, the allegations brought against the Moving Defendants stem from the alleged harm caused by a faulty financial statement provided by the Kelley Defendants. According to the Complaint, the Kelley Defendants knew of facts contradicting the information in the financial statement they prepared, they do not possess any supporting documents related to the financial statement, they failed to properly gain and possess an understanding of the Debtor, they breached their own internal policies and applicable professional standards by failing to review the financial statement, they did not perform their services in good faith, they had a conflict of interest with the Debtor and

8

the Debtor's operations, and they knew of and assisted in Mr. Meisner's breach of fiduciary

duties to the Debtor. These allegations center around accounting services the Kelley Defendants

provided to the Debtor itself that, according to the Complaint, ultimately harmed the Debtor as

an entity. The claims stated in the Complaint belong to the Debtor and not to individual

creditors.

The case law cited by the Moving Defendants in support of their argument does not

compel a different result. In *E.F. Hutton & Co. v. Hadley*, GIC, a dealer in government-backed

mortgage securities, operated a Ponzi scheme by diverting for its own purposes funds paid by its

customers for securities purchased by GIC from Hutton, with which GIC had a margin account.

901 F.2d 979 (11th Cir. 1990). GIC filed for bankruptcy and its trustee sued Hutton on a number

of state law theories. The trustee in *Hadley* admitted that he asserted claims belonging to a

specific group of GIC customer creditors. The *Hadley* court found, in a decision limited to the

peculiar facts of the case, that the trustee lacked standing. In contrast, the Trustee here alleges

harm to the Debtor itself. The Trustee has not conceded, as did the trustee in *Hadley*, that he

brings only claims belonging to a certain group of creditors.

In *Arwood v. Dunn (In re Caribbean K Line, Ltd.)*, 288 B.R. 908, 913 (S.D. Fla. 2002),

the court examined whether a trustee had standing to assert a claim against an insider of the

debtor for breach of fiduciary duty in paying out the last funds of the debtor to a single holder of

a promissory note executed by the debtor. In *Caribbean K Line*, while the general creditors of

the debtor were harmed by the transfer of the debtor's limited funds, the court found that the

debtor itself was also harmed. Accordingly, the court ruled that the trustee had standing to bring

claims of the debtor against the transferor of the funds. The Kelley Defendants' attempt to

distinguish *Caribbean K Line* does not alter the underlying premise that harm alleged to the

9

debtor confers standing upon the trustee. Such is the case here.

In *Securities Investor Protection Corp. v. Capital City Bank (In re Meridian Asset Management, Inc.)*, 296 B.R. 243 (Bankr. N.D. Fla. 2003), the court determined that, even when drawing all inferences from the complaint in favor of the trustee, it was apparent that Meridian did not perform legitimate business and that Meridian's bank accounts, which held monies purportedly to be invested in mutual funds, retirement accounts, or other investment accounts, were shams "created to mislead customers and as a vehicle to channel money." *Id.* at 252. "Meridian's bank accounts were a façade of legitimacy and were solely used to defraud customers and embezzle their money:  Any alleged injury to Meridian was illusory." *Id.*  The trustee in that case did not allege that the corporation itself was injured by its principal's action. The *Meridian* court also noted that Meridian was managed by a sole owner who committed wrongful acts.   In the absence of innocent decision-makers who could have prevented its principal's embezzlement, the wrongs of the principal were imputed to the debtor.

To the extent the *Meridian* court's decision rests upon imputing its principal's wrongful acts to Meridian itself, that issue goes to whether the Debtor and the Moving Defendants were *in pari delicto* and is discussed below.  To the extent the *Meridian* court held that the plaintiff lacked standing because the complaint failed to allege injury to the corporation that was distinct from the injuries suffered by the corporation's customers, the facts of this case differ.  Here, the Trustee has alleged injury to the Debtor independent of any injury to the Debtor's creditors.

In *Shearson Lehman Hutton, Inc. v. Wagoner*, the Second Circuit held that a trustee lacked standing because "[a] claim against a third party for defrauding a corporation with the cooperation of management accrues to creditors, not to the guilty corporation."  944 F.2d 114, 120 (2d Cir. 1991).  The *Wagoner* court reasoned that because "a class of creditors [] suffered

harm, the corporation itself had not." *Id.* (*citing Fisher, Hect & Fisher v. D.H. Overmyer Telecasting Co. (In re D.H. Overmyer Telecasting Co.)*, 56 B.R. 657, 661 (Bankr. N.D. Ohio 1986)). As a result, the trustee lacked standing. Courts that follow the *Wagoner* rule combine the analysis of standing with the analysis of the affirmative defense of *in pari delicto*. *E.g.*, *Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000). In this Circuit, the preliminary issue of standing is analyzed separately from the affirmative defense of *in pari delicto*. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1149 (11th Cir. 2006).

The requirements for standing under Article III of the United States Constitution are injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A complaint may survive a motion to dismiss based on standing if the complaint contains general factual allegations of injury resulting from the defendant's conduct. *Bischoff v. Osceola County*, 222 F.3d 874, 878 (11th Cir. 2000).

Case law in this Circuit supports the proposition that a sham corporation cannot suffer injury and, accordingly, a trustee standing in the shoes of that corporation lacks standing to sue. In *Feltman v. Prudential Bache Securities*, the trustee and unsecured creditors committee for two "sham corporations" sued the principal officer of the corporations who defrauded investors out of millions of dollars, and also sued the brokers, bankers, and accountants who allegedly assisted in perpetrating the fraud. 122 B.R. 466 (S.D. Fla. 1990). The *Feltman* court found, among other things, that while the plaintiffs alleged injury to the corporations, the plaintiffs alleged that the corporations were sham entities, alter egos with no identity independent of their principal. As such, any alleged injury to the corporations was illusory and the trustee lacked standing to bring the action.

In *O'Halloran v. First Union National Bank of Florida*, the court found that the Greater

11

Ministries church was used primarily as a vehicle for the church elders to operate a Ponzi scheme.  350 F.3d 1197 (11th Cir. 2003).  Funds obtained as a result of the Ponzi scheme were commingled in several bank accounts, one with the defendant First Union.  The trustee alleged that First Union had actual knowledge of Greater Ministries' misdeeds and sued First Union on four state law theories.  The court found that Greater Ministries' "primary existence was as a perpetrator of the Ponzi scheme" and, therefore, it could not have suffered injury from the scheme it perpetrated.  Because Greater Ministries suffered no injury from the Ponzi scheme, Greater Ministries and its trustee lacked standing to sue the bank on tort claims relating to that scheme.

So long as the Debtor is a distinct legal entity and is not merely Mr. Meisner's alter ego, the alleged wrongful acts of Mr. Meisner and the Moving Defendants could injure the Debtor.  The Trustee would then have standing.  *See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 354 (3d Cir. 2001) ("[A]ccepting all of the Committee's allegations as true and reading them in the light most favorable to the Committee, we cannot state with certainty that Walnut's corporate existence should be disregarded such that any deepening insolvency injury was illusory. . . .  We therefore agree with the District Court that the possibility of a distinct and separate injury to the Debtors cannot be ruled out at the motion to dismiss stage.").

In this case, the Complaint taken as a whole does not describe the Debtor as a "sham" corporation.  The Trustee alleges that the Debtor was a commodities and futures trading and investment entity, and the Complaint indicates that the Debtor engaged in legitimate business before and during Mr. Meisner's implementation of the Ponzi scheme.  Based on the allegations in the Complaint, it is possible for the Court to conclude that the Debtor suffered a distinct and

cognizable injury.  Accordingly, the Trustee has standing to bring these claims against the Moving Defendants.

### Imputation and *In Pari Delicto*

The Kelley Defendants argue that the doctrines of imputation and *in pari delicto* bar the Trustee's claims in this adversary proceeding.  The Kelley Defendants argue that Mr. Meisner was an agent of the Debtor, Mr. Meisner engaged in wrongful activity while acting in such capacity, and Mr. Meisner's wrongful acts should be imputed to Mr. Meisner's principal, the Debtor.  If Mr. Meisner's wrongful acts are imputed to the Debtor, then the doctrine of *in pari delicto* would prevent the Debtor from pursuing the present claims against the defendants. Because the Trustee stands in the shoes of the Debtor as of the commencement of the bankruptcy case, the doctrine of *in pari delicto* would then bar the Trustee from recovering in this action. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006).

The affirmative defense of *in pari delicto* typically requires proof of facts asserted by the defendant and, as such, is seldom an appropriate ground for granting a motion to dismiss. *Pearlman v. Alexis*, 2009 U.S. Dist. LEXIS 88546 (S.D. Fla. Sept. 25, 2009); *World Capita Commc'ns, Inc. v. Island Capital Management, LLC (In re Skyway Commc'ns Holding Corp)*, 389 B.R. 801, 810 (Bankr. M.D. Fla. 2008).   The defense may be asserted at the motion to dismiss stage only where the facts establishing the defense: (1) are definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude.  *Gray v. Evercore Restructuring L.L.C.,* 544 F.3d 320, 325 (1st Cir. 2008) (quotations omitted).

"The doctrine of *in pari delicto* is an equitable doctrine that states 'a plaintiff who has

13

participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Edwards*, 437 F.3d at 1152 (citation omitted.); *accord In re Skyway Commc'ns Holding Corp*, 389 B.R. at 809.  This Court looks to state law to determine if an agent's wrongful conduct should be imputed to a corporate principal.  *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 89 (1994).

> Under Florida law,

> [w]here it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud.

*Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3d DCA 1992).

If, however, the agent's misconduct is calculated to benefit the agent and harms the corporation, the agent has forsaken the corporation and acts only for himself.  *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007).  In such a case, the agent's misconduct is not imputed to the principal.  Courts call this the "adverse interest" exception to imputation of an agent's knowledge and conduct to its principal.  *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998).  If an agent's misconduct is not imputed to the principal, then the corporation is free from wrongdoing and is not subject to the *in pari delicto* defense.  Jonathan Witmer-Rich & Mark Herrmann, *Corporate Complicity Claims:  Why There is No Innocent Decision-Maker Exception to Imputing an Officer's Wrongdoing to a Bankrupt Corporation*, 74 Tenn. L. Rev. 47, 60 (2006).  Courts examine whether the corporation received any benefit from the agent's misconduct to determine whether the adverse interest exception applies in a particular case.  *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3d DCA 1992).

Even if the agent's misconduct is calculated to benefit only the agent, to the detriment of

14

its principal, imputation is still proper where the "sole actor" doctrine applies.  *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1045 (Fla. 2d DCA 2007).  The "sole actor" doctrine provides that the adverse interest exception to the imputation rule is inapplicable "where the transaction on behalf of the principal is entrusted solely to the officer or agent having the knowledge."  *Id. at* 1045 (quotation omitted).  "[W]here the officer in question is the sole representative of that corporation, there is no one to whom to impart his knowledge and no one from whom he may conceal it."  *Gordon v. Basroon (In re Plaza Mortg. & Fin. Corp.)*, 187 B.R. 37, 45 n.6 (Bankr. N.D. Ga. 1995) (citation omitted).  When a corporation has multiple officers and directors, the sole actor rule may apply when "all relevant shareholders and decision-makers were involved in the fraud."  *Ernst & Young v. Bankruptcy Servs. (In re CBI Holding Co.)*, 311 B.R. 350, 373 (S.D.N.Y. 2004), *aff'd in part, rev'd on other grounds by* 529 F.3d 432 (2d Cir. 2008).  Courts thus consider whether there exist relevant decision-makers who are innocent of the fraud.  Witmer-Rich & Herrmann, *supra*, at 62.[2]

Here, the Trustee alleges that there are innocent members of the Debtor's management who could or would have prevented Mr. Meisner's fraud.  The Court cannot determine whether the alleged innocent managers negate the movants' sole actor allegation without reviewing the evidence.  Consequently, the Court cannot apply the sole actor rule at the motion to dismiss stage in this case.

The movants argue that the Debtor served as a vehicle for theft and received a benefit from Mr. Meisner's misconduct.  They posit that Mr. Meisner's wrongdoing thus is imputed to

---

[2] Some courts have described the innocent decision-maker analysis as an exception to imputation separate and apart from the sole actor determination.  In other words, if a corporation has innocent decision-makers, an agent's misconduct is not imputed to the corporation.  Such an application of the innocent decision-maker principle is not consistent with basic tenets of agency law.  *In re CBI Holding Co.*, 311 B.R. at 372-73; Witmer-Rich & Herrmann, *supra*, at 64-86.  The Court rejects this approach.

the Debtor and the Trustee is barred from pursuing the present claims against the Moving Defendants. Their argument focuses on the Debtor being a "guilty corporation" and receiving a benefit from Mr. Meisner's wrongdoing. But the Complaint as plead supports neither premise.

The Trustee does not allege that the Debtor was a sham corporation nor does he describe the Debtor as a vehicle whose sole or even primary purpose was to perpetuate Mr. Meisner's Ponzi scheme. Viewing the Complaint in the light most favorable to the Trustee, the Debtor had legitimate business operations before and during Mr. Meisner's implementation of the Ponzi scheme and Mr. Meisner was acting as a rogue officer in perpetrating fraud using part of the Debtor's business enterprise. This case is unlike *Feltman v. Prudential Bay Securities*, 122 B.R. 466 (S.D. Fla. 1990), as the Complaint here supports the conclusion that the Debtor had other business and was not a sham or solely the instrument of fraud.

Likewise, the Trustee alleges that Mr. Meisner caused the Debtor harm and damage and did not act in the Debtor's best interest at all material times. (Compl. ¶ 89.) The Trustee alleges that Mr. Meisner implemented his fraud through the Debtor, harming the Debtor, and that Mr. Meisner dissipated, diverted and depleted the Debtor's assets, without any corresponding benefit to the Debtor. (Compl. ¶¶ 97, 102.) From the face of the Complaint, the Debtor did not obtain any readily discernible short term benefit from Mr. Meisner's bad acts. Accordingly, it is not apparent from the Complaint that Mr. Meisner's misconduct is attributable to the Debtor.

The resolution of the *in pari delicto* defense requires the Court to engage in "an essentially equitable and necessarily factbound apportionment of responsibility" among Mr. Meisner, the Debtor, and other insiders of the Debtor. *Pearlman v. Alexis*, 2009 U.S. Dist. LEXIS 88546 (S.D. Fla. Sept. 25, 2009). It is not appropriate to engage in such an analysis at this stage of the litigation.

16

## Statute of Limitations

CCIP argues that the Trustee's claims for professional negligence and aiding and abetting breach of fiduciary duty both fall under the two year statute of limitations for professional malpractice claims provided by Florida Statutes § 95.11(4)(a).  CCIP argues that this two year period began to run on October 17, 2005, the date of the financial statement provided by KGLC to the Debtor, and that it thus expired in October 2007, prior to the filing of this bankruptcy case. In response, the Trustee argues that the claim for aiding and abetting breach of fiduciary duty is subject to the four year statute of limitations provided for intentional torts under Florida Statutes § 95.11(3)(o).  The Trustee also argues that to the extent the two year statute of limitations for professional malpractice applies to the professional negligence or aiding and abetting breach of fiduciary duty claims, such two year period is subject to tolling as a result of the delayed discovery doctrine made applicable to professional malpractice claims under Florida Statutes § 95.11(4)(a).

The statute of limitations is an affirmative defense.  A court may grant a motion to dismiss based on the statute of limitations if the facts constituting the defense affirmatively appear on the face of the complaint and establish conclusively that the statute of limitations bars the action as a matter of law.  *GLK, L.P. v. Four Seasons Hotel Ltd.*, 22 So. 3d 635, 636-37 (Fla. 3d DCA 2009).

Section 108(a) of the Bankruptcy Code provides the Trustee two years from the entry of an order for relief to bring an action so long as the applicable non-bankruptcy statute of limitations had not expired as of the petition date.  This adversary proceeding was filed June 4, 2010, less than two years after the June 10, 2008 order for relief in the main bankruptcy case.  So

17

long as the applicable non-bankruptcy statutes of limitation had not run as of the petition date, May 8, 2008, this adversary proceeding is timely filed.

To the extent the four year limitations period under Florida Statutes § 95.11(3)(o) applies to the Trustee's aiding and abetting breach of fiduciary claim, there is no dispute that such claim was timely filed here.  The period began to run, at the earliest, on October 17, 2005, the date of the financial statement giving rise to the Trustee's claims.  The four year period would have expired more than a year after the petition date here, making the claim timely under 11 U.S.C. § 108(a).

The two year limitation period under Florida Statutes § 95.11(4)(a) applies to the Trustee's professional negligence claim.  CCIP argues that it also applies to the Trustee's claim for aiding and abetting breach of fiduciary on the ground that, in their view, such claim is tantamount to a professional malpractice claim.  If the Court were to look no further than the provisions of Florida Statutes § 95.11(4)(a) and 11 U.S.C. § 108(a), in light of the applicable dates in this case, and consider only the date of the financial statement in question, the Trustee's claims would be untimely to the extent governed by the two year statute of limitations.

However, the Court must consider when the Debtor's claims, and thus the Trustee's claims, accrued under Florida law.  A cause of action accrues when the last element constituting the cause of action occurs.  Fla. Stat. § 95.031(1).  A statutory exception known as the "delayed discovery doctrine" applies to certain causes of action, including professional malpractice claims.  Fla. Stat. § 95.11(4)(a); *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002).  The period of limitations for an action for professional malpractice commences when the plaintiff either discovers the cause of action or should have discovered the cause of action with the exercise of due diligence.  Fla. Stat. § 95.11(4)(a).  The knowledge of a corporation's directors may be

18

imputed to the corporation. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998). However, it is not appropriate to impute a particular insider's knowledge to the corporation when the insider was acting adversely to the interests of the corporation. *Id.* When the statute of limitations commences is a question of fact for determination by the court. *Moecker v. Honeywell Int'l, Inc.,* 2000 U.S. Dist. LEXIS 21191 (M.D. Fla. Oct. 23, 2000).

Here, when the Debtor discovered or should have discovered the falsity of the subject financial statement depends on whether Mr. Meisner's knowledge should be imputed to the Debtor. If Mr. Meisner was acting adverse to the interests of the Debtor, and thus outside the scope of his agency, imputation may not be proper. The Court analyzed identical concerns above in connection with the discussion of the *in pari delicto* defense. As previously stated, the allegations of the Complaint read in the light most favorable to the Trustee do not compel a finding that Mr. Meisner's knowledge should be imputed to the Debtor. Under the circumstances of this case, it is not appropriate for the Court to delve into this necessarily fact based analysis at the motion to dismiss stage. The determination of whether the Trustee's claims for professional negligence and aiding and abetting breach of fiduciary duty are time barred must be left for trial.

### Contribution

The Kelley Defendants argue that the Debtor was an intentional tortfeasor and its actions resulted in the losses suffered by the Debtor's creditors. The Kelley Defendants argue that the Trustee implies in the Complaint that the Debtor has paid more than its *pro rata* share of a common liability and seeks contribution from those it alleges negligently contributed to the losses suffered. In response, the Trustee argues that he is not seeking contribution in this action and, therefore, Florida Statutes § 768.31(2)(c) is not applicable. The Court agrees with the

19

Trustee's position.  The Complaint does not state a claim for contribution under Florida law.

## Permissive Abstention

The Moving Defendants argue, in the alternative, that this Court should exercise its discretion and abstain from hearing this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1).[3]  Section 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Courts look to the following factors to determine whether to exercise permissive abstention:

(1) the effect, or lack of effect, on the efficient administration of the bankruptcy estate if discretionary abstention is exercised,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficulty or unsettled nature of the applicable state law,

(4) the presence of related proceedings commenced in state court or other non-bankruptcy courts,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceedings to the main bankruptcy case,

(7) the substance rather than the form of an asserted "core" proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9)  the burden on the bankruptcy court's docket,

---

[3] No party has suggested that the mandatory abstention provisions of 28 U.S.C. § 1334(c)(2) apply.  Therefore, the Court's abstention analysis focuses solely on permissive abstention under 28 U.S.C. § 1334(c)(1).

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to jury trial,

(12) the presence in the proceeding of non-debtor parties,

(13) comity, and

(14) the possibility of prejudice to other parties in the action.

*E.S. Bankest v. United Beverage Florida (In re United Container LLC)*, 284 B.R. 162, 176 (Bankr. S.D. Fla. 2002). No one factor is controlling and courts have discretion to determine the relative weight afforded each factor. *Gradco Corp. v. Blankenship (In re Blankenship)*, 408 B.R. 854, 861 (Bankr. N.D. Ala. 2009). Courts should abstain from ruling on a controversy within their jurisdiction only in limited, exceptional circumstances. *Hospitality Ventures/LaVista v. Heartwood 11, L.L.C. (In re Hospitality Ventures/LaVista)*, 314 B.R. 843, 850 (Bankr. N.D. Ga. 2004).

On balance, the Court finds that permissive abstention is not appropriate in this case. It is true, as the Moving Defendants argue, that the issues in this adversary proceeding involve matters of state law. However, the Trustee's claims for professional negligence and aiding and abetting breach of fiduciary duty are neither difficult nor unsettled issues of state law.

It is also true, as the Moving Defendants argue, that there is no jurisdictional basis for this adversary proceeding other than section 1334. The parties agree that this is a "non-core" proceeding and that the Moving Defendants are entitled to a jury trial. However, the District Court has already granted both the Kelley Defendants' and CCIP's motions to withdraw the reference for purposes of trial [DE 36 and 49], effectuating the Moving Defendants' right to a jury trial. The matter remains for pretrial purposes with this Court, a court familiar with the

circumstances of this case.

As noted above, the issues raised in this adversary proceeding are sufficient to confer subject-matter jurisdiction upon this Court.  While not central to this bankruptcy case, the issues presented are not so remote as to overcome the overall weight of those factors militating against abstention.

Abstention would neither help nor harm the efficient administration of the bankruptcy estate.  The burden on the court's docket is a neutral factor.  It does not appear to the Court that there is forum shopping involved here.

Importantly, none of the parties to this adversary proceeding filed actions elsewhere that remain pending.  "Courts generally do not permissively abstain from hearing a case unless there is a pending state action in favor of which the federal court should abstain."  *AASI Creditor Liquidating Trust v. PeopleSoft, USA, Inc. (In re All Am. Semiconductor, Inc.)*, No. 09-1466-LMI, 2010 Bankr. LEXIS 2321 (Bankr. S.D. Fla. July 20, 2010).

Should the Court abstain from hearing this case, the Trustee may be deprived of a forum in which to litigate this matter.  While 11 U.S.C. § 108(a) also tolls commencement of actions in the state court, now more than two years have passed since the petition date.  In filing a state court action at this time the Trustee could no longer claim the benefit of section 108(a) and would need to rely solely on state law statute of limitations analysis to avoid dismissal of his claims in state court.  It is possible the Trustee's claims may be timely here because filed within two years of the petition date, but time barred in state court if filed now.  Therefore, to abstain may deprive the Trustee of the opportunity to litigate this action.  This weighs heavily against abstention.

Based on the foregoing, taking into account all of the circumstances of this adversary

proceeding, the Court finds that permissive abstention is not appropriate in this matter.

Accordingly, it is

ORDERED AND AJDUDGED that:

1.     *Defendant CCIP Orlando, Ltd., LLC's Motion to Dismiss or, in the Alternative, Motion for Permissive Abstention* [DE 11] is DENIED in all respects.

2.     *Defendants, Kyle H. Kelley and Kelley Goldberg Leach & Cohn, P.L.'s Motion to Dismiss Adversary Proceeding or in the Alternative for Abstention and Incorporated Memorandum of Law* [DE 17] is DENIED in all respects.

###

Copies Furnished To:

Solomon B Genet, Esq.

*Solomon B Genet, Esq. is directed to serve a conformed copy of this order on all appropriate parties and to file a certificate of service.*